**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ENRIQUE IMBERT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COMMVAULT SYSTEMS, INC., SANJAY MIRCHANDANI, and JENNIFER DIRICO, <br><br> Defendants. | Case No. 3:26-cv-05654 <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **CLASS ACTION** <br><br> <u>Demand for Jury Trial</u> |

Plaintiff Enrique Imbert ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Commvault Systems, Inc. ("Commvault" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Commvault's public documents, earnings calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Commvault securities between April 29, 2025 to January 26, 2026, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.      Defendants provided investors with material information pertaining to Commvault's projected ARR growth for fiscal year 2026. Defendants' statements included, among other things, misleading guidance and projections related to the Company's new net ARR growth.

3.      Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts concerning the true state of Commvault's ARR growth environment; pertinently, Commvault knew or recklessly disregarded that the Company's ARR growth guidance failed to properly factor in crucial variables, such as the type of sale. Such statements absent these

material facts caused Plaintiff and other shareholders to purchase Commvault's securities at artificially inflated prices.

4. The truth emerged on January 27, 2026, when Commvault published third quarter 2026 fiscal results, which included ARR growth below the guidance provided by the Company. In particular, ARR growth for the third quarter 2026 was $39 million, which fell short of the $45 million projection provided.

5. Investors and analysts reacted immediately to Commvault's revelation. The price of Commvault's common stock declined dramatically. From a closing market price of $129.36 per share on January 26, 2026, Commvault's stock price fell to $89.13 per share on January 27, 2026, a decline of over 31% in a single day.

## JURISDICTION AND VENUE

6. Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Commvault's offices are located in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District, including but not limited to the transmission of public statements to the market from Commvault's offices in Tinton Falls, New Jersey.

10.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

11.    Plaintiff purchased Commvault common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Commvault is attached hereto.

12.    Commvault, Inc. is a Delaware corporation with a principal executive office located at 1 Commvault Way, Tinton Falls, New Jersey 07724 through which the Company frequently communicates with investors. During the Class Period, the Company's common stock traded on the Nasdaq Global Select Market (the "NASDAQ") under the symbol "CVLT."

4

13. Defendant Sanjay Mirchandani ("Mirchandani") was, at all relevant times, the President, Chief Executive Officer, and Director, of Commvault.

14. Defendant Jennifer DiRico ("DiRico") was, from the beginning of the Class Period until December 31, 2025, Chief Financial Officer of Commvault.

15. Defendants Mirchandani and DiRico are sometimes referred to herein as the "Individual Defendants." Commvault together with the Individual Defendants are referred to herein as the "Defendants."

16. The Individual Defendants, because of their position with the Company, possessed the power and authority to control the contents of Commvault's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded

herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17. Commvault is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

18. The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Commvault under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

19. Commvault is a data protection company. The firm provides data protection, cyber resilience solutions, and management software, specializing in hybrid and multi-cloud environments.

*The Defendants Materially Misled Investors Concerning*

*The Commvault's Fiscal Year 2026 ARR Growth Guidance*

*April 29, 2025*

20. On April 29, 2025, Commvault published a press release and hosted an associated earnings call announcing fourth quarter and fiscal year 2025 results. Defendant Mirchandani stated, in pertinent part:

6

It was a record-breaking year at Commvault. Commvault surpassed all key metrics, ended the year with over 12,000 subscription customers, and is firmly positioned as a growth company with subscription revenue up 45% in Q4. We continue to deliver cloud-first innovations that solve a hard problem for customers – strengthening their cyber resilience.

21.    During the associated earnings call, Defendant DiRico announced fiscal year 2026 guidance, in relevant part:

Now I'm happy to share our initial FY '26 outlook. *We expect fiscal year '26 total ARR growth of 16% to 17% year-over-year. This will be driven by subscription ARR, which we expect to increase in the range of 22% to 23% year-over-year.* Beginning in FY '26, we will report ARR on both a reported and an FX-adjusted basis using rates as of March 31, 2025. For a historical comparison, please refer to Page 27 of our Q4 earnings presentation, which includes FY '25 ARR rebased using these same rates. From a full year fiscal '26 revenue perspective, we expect subscription revenue to be in the range of $727 million to $732 million, growing 24% at the midpoint with strong contribution from both term software licenses and SaaS. We expect total revenue of $1.13 billion to $1.14 billion, an increase of 14% at the midpoint.

[Emphasis added].

*July 29, 2025*

22.    On July 29, 2025, Commvault published a press release and hosted an associated earnings call announcing first quarter 2026 results. Defendant Mirchandani stated, in pertinent part:

Commvault delivered a strong start to the fiscal year, fueled by customer growth, disciplined execution, and rising demand for our industry-leading cyber resilience platform. With a best-in-class partner ecosystem and continuous innovation that we believe sets us apart, we are well-positioned to continue to take share in fiscal 2026 and beyond.

7

23.    During the associated earnings call, Defendant DiRico announced

Commvault's second quarter outlook and updated guidance for fiscal year 2026, in

relevant part:

Now I'll discuss our outlook for Q2 and our updated outlook for fiscal year '26. For fiscal Q2 '26, we expect subscription revenue, which includes both the software portion of term-based licenses and SaaS to be in the range of $174 million to $176 million. This represents 31% year-over-year growth at the midpoint. We expect total revenue to be in the range of $272 million to $274 million, with growth of 17% at the midpoint. At these revenue levels, we expect Q2 consolidated gross margins to be in the range of 81% to 82%. We expect Q2 non-GAAP EBIT margins of approximately 20%, including the integration of Satori Cyber.

Now I'm happy to share that we are raising our fiscal year 2026 guidance. As a reminder, ARR guidance is in constant currency using FX rates as of March 31, 2025. For a historical comparison, please refer to our Q1 earnings presentation. ***We expect constant currency FY '26 total ARR growth of 18% year-over-year. This will be driven by subscription ARR, which we expect to increase by 24% year-over-year.*** From a full year fiscal '26 revenue perspective, we expect subscription revenue to be in the range of $753 million to $757 million, growing 28% at the midpoint with strong contributions from both term software licenses and SaaS. We expect total revenue of $1.161 billion to $1.165 billion, an increase of 17% at the midpoint.

[Emphasis added].

24.    Also during the earnings call, Defendant DiRico answered questions

from analysts present at the call, in pertinent part:

<Q: Rudy Grayson Kessinger - D.A. Davidson & Co. – Analyst> Very strong results all around. I want to dig into maybe just the net new ARR in Q1. It does look like it's skewed much more towards term license

relative to SaaS just versus the trend over last year, very strong term license net new ARR. Anything to call out there in terms of how deal dynamics shaped up? Or any color on maybe what was a bit weaker of a SaaS net new ARR quarter?

<A: Jennifer DiRico> Yes. So first of all, I would say our SaaS business performed as expected and in line, and we're very pleased with that. the delta did come from overperformance in the software side of things. At the very, very end of the quarter, we did benefit from higher close rates on a few software deals. As it relates to as we think about the SaaS business overall and overall net new ARR on a quarterly basis, we believe going forward that you can see north of $20 million in the SaaS net new ARR. ***And then on the go forward, around $40 million total net new ARR quarter-over-quarter for the remaining of the year.***

### *December 4, 2025*

25.    On December 4, 2025, Commvault published a press release announcing that Defendant Jennifer DiRico, the Company's CFO, would be departing at the end of the calendar year. The press release stated, in relevant part:

As part of this transition, Sanjay Mirchandani, Commvault's President and CEO, will assume oversight of a newly established Office of the CFO comprised of Kevin White, Vice President of Finance, and Danielle Abrahamsen, Chief Accounting Officer, until the new CFO is in place.

### *October 28, 2025*

26.    On October 28, 2025, Commvault published a press release and hosted an associated earnings call announcing second quarter 2026 results. Defendant Mirchandani stated, in pertinent part:

Commvault delivered a strong quarter fueled by solid ARR and SaaS growth that accelerated a key milestone for the company – achieving $1 billion in total ARR – two quarters earlier than projected. As enterprises globally rely on Commvault to be resilient, our cloud-first, AI-enabled cyber resilience platform is more relevant than ever.

27.    During the associated earnings call, Defendant DiRico announced Commvault's third quarter outlook and updated guidance for fiscal year 2026, in relevant part:

Now I'll discuss our Q2 results and operating metrics followed by an update on Q3 and FY '26 guidance. Please note that all growth rates are on a year-over-year basis unless otherwise specified. On a reported basis, total annual recurring revenue increased by 22% to $1.04 billion or 21% on a constant currency basis. Subscription ARR increased 30% to $894 million, representing 29% growth on a constant currency basis. This was led by 56% growth in SaaS ARR to $336 million. And I'm excited to share that we exceeded our original $330 million SaaS ARR target 2 quarters earlier than planned. Subscription ARR now constitutes 86% of total ARR compared to 81% 1 year ago. Subscription ARR is the best indicator of the company's growth.

*      *      *

Now I'll discuss our updated fiscal year 2026 guidance. As a reminder, ARR guidance is in constant currency using FX rates as of March 31, 2025. For a historical comparison, please refer to Page 30 of our Q2 earnings presentation. We now expect constant currency fiscal '26 total ARR growth of 18% to 19% year-over-year. This will be driven by subscription ARR, which we now expect to increase by 24% to 25% year-over-year. That represents an increase of 50 basis points at the midpoint for both metrics.

From a full year fiscal '26 revenue perspective. We continue to expect subscription revenue to be in the range of $753 million to $757 million, growing 28% at the midpoint. Our guidance assumes a continued shift in term duration during the second half of the year. We reiterate total

10

revenue of $1.161 billion to $1.165 billion, an increase of 17% at the midpoint.

Moving to our full year fiscal '26 margin, EBIT and cash flow outlook. We now expect gross margins to be 80.5% to 81.5%. This range reflects continued growth in our SaaS platform, which carries a different gross margin profile than software. We now expect non-GAAP EBIT margins of approximately 18.5% to 19.5%.

Non-GAAP EBIT margins reflect our ongoing investments in additional growth driving initiatives. We are raising our full year free cash flow outlook to a range of $225 million to $230 million. This guidance reflects benefits from recent federal tax law changes.

28. Also during the earnings call, Defendant DiRico answered questions from analysts in attendance, in pertinent part:

<Q: Rudy Grayson Kessinger - D.A. Davidson & Co – Analyst> Congrats on a strong quarter. When I look at ARR which obviously matters much more than revenue. Obviously, record net new ARR, and by my math, organic ARR growth at constant currency accelerated a point to 19%. Jen, you talked about ongoing investments in growth initiatives as part of the reason for the EBIT margin guidance coming down in addition to the gross margin compression. Could you just talk about where you're making those incremental investments? And could we see further ARR growth acceleration over the next year or so as a result of those investments?

<A: Jennifer DiRico> Yes, sure. So let me start by saying what we did was continue to keep operating expenses at about 61% of revenue that's consistent with prior quarter and prior year. The overall gross margin pressure that we saw really came down to the fact that our SaaS business continues to accelerate, which as we all know is a -- is a great thing and ultimately just has a different margin profile. And then overall, the Shift in term duration. So ultimately, this quarter, the pressure really came down to gross margin.

As we think about the back half of the year, ultimately, what I would say to you is the investments we started out with the year in terms of

11

continuing to accelerate our SaaS motion, right? We're still making those plays. ***As evidenced by the guidance for the back half of the year implies a $45 million of net new ARR on a constant currency basis, which, as you remember, is above that $40 million that I first started the year with.*** And so ultimately, our investments are paying off, and we're going to continue to [execute] it.

[Emphasis added].

29.    The above statements in Paragraphs 20 to 28 were false and/or materially misleading. Defendants created the false impression that Commvault's annualized recurring revenue (ARR) growth would remain steady throughout fiscal year 2026. In particular, Commvault knew or recklessly disregarded the impact that different types of sales would have on its ARR growth. In fact, the variation in net ARR growth is strongly based on the type of sale Commvault is making, thus, the Company's projected net new ARR should not have been determined without properly factoring in sale type.

*The Truth Emerges*

*<u>January 27, 2026</u>*

30.    On January 27, 2026, Commvault published a press release and hosted an associated earnings call announcing third quarter 2026 results. Defendant Mirchandani stated, in pertinent part:

Commvault delivered another quarter of healthy growth and profitability driven by record customer engagement and adoption. Customers and partners are turning to Commvault because they require an AI-enabled platform that addresses rapidly evolving identity and emerging threats, supports compliance, and brings resilience to hybrid and multi-cloud environments.

12

31.   During the associated earnings call, Danielle Abrahamsen, Commvault's Chief Accounting Officer, presented the Company's new ARR results for third quarter 2026, in relevant part:

> Now I'll discuss ARR. ***Subscription ARR, which we believe is the best indicator of the company's health and growth increased 28% to $941 million. This was driven by 40% growth in SaaS ARR to $364 million.*** Subscription ARR now represents 87% of total ARR compared to 83% 1 year ago. Total ARR increased by 22% to $1.085 billion. Existing customer expansion was healthy in Q3, with SaaS net dollar retention of 121%, consistent with best-in-class SaaS platforms.

[Emphasis added].

32.   During the question-and-answer segment of the earnings call, Defendants answered questions from analysts, in pertinent part:

> <Q: Aaron Christopher Rakers - Wells Fargo Securities – Analyst> I have two, if I can, real quick. First, I was wondering if you could unpack the -- I guess it's the free cash flow, but particularly the accounts receivable increase and the DSO increase in the quarter. I know you had alluded to later in the quarter kind of receivable collection. So can you unpack that, just help me understand why DSO has gone up so much and what you saw towards the end of the quarter, just given linearity.
>
> <A: Danielle Abrahamsen> Yes. Aaron, this is Danielle. Good to talk to you again. So I know I talked about this in my prepared remarks, and you kind of hit on it, right? But one of the things we saw this quarter, and it's not uncommon in Q3, I'll be honest. Q3 has a tendency to be one of our most pressured free cash flow quarters. ***And it's really just because of the way the sales cycles work with the calendar year-end, we have a tendency to see more deals close in the last few weeks of the quarter and this quarter was no exception to that. I can tell you, over 60% of our deals actually closed in the last few weeks of the***

*quarter. And so what you see in free cash flow is really the reflection of that.*

The other thing I'll call out is we had an additional payroll cycle for both the U.S. and Canada. That's not normal for us in a quarter. And obviously, the U.S. is one of our largest payrolls, right? So both of those things are putting pressure on free cash flow. I do want to highlight our free cash flow guidance for the year, if you normalize for the onetime payments that we're making in Q4 tied to the cost optimization program remains unchanged.

*        *        *

<Q: Jason Noah Ader William - Blair & Company – Analyst> Okay. I got you. All right. And then the net new ARR, I think constant currency was for total net new ARR was $39 million. I believe on the last earnings call, you guys talked about mid-40s. So just wanted to understand, was that below what your expectations were? And if so, why?

<A: Danielle Abrahamsen> Yes. So let me unpack that a little bit, right? So -- and as we mentioned on the call, we had a really strong new customer quarter. It was actually our top term software new customer quarter and our second highest customer acquisition quarter for SaaS. For SaaS, in particular, I will tell you, 70% of our net new ARR was driven by SaaS. As a reminder, we land those customers at lower ASPs, on average, typically 2 to 3x what we would land a software customer with. And so what you're seeing in the ARR is just a reflection of that math. We're still very happy about that because what that does is give us the opportunity to go out, cross-sell and gain further value with those customers. The other comment I'll make is going back to the software land piece, we have a tendency to land those customers at a longer duration. So that does have some modest dilution on ARR.

<Q: Jason Noah Ader> *Okay. I guess what I'm getting at, guys, is just what was the delta versus the $45 million that you guys had talked about you ended up with $39 million, something must have not played out as you expected?*

14

<A: Sanjay Mirchandani> *Yes. So this is Sanjay. Jason, it's really just -- we sold a lot of SaaS deals, land deals this quarter. And when you -- that's why you have to look at it on an annual basis because there will be variation quarter-to-quarter. We sell a lot of software, and it was also a big software land quarter for us. So when you take -- you take that together, it's -- that kind of explains the delta, if you would. But by every stretch of the imagination, it was a very strong quarter.*

<A: Danielle Abrahamsen> *And Jason, let me just add a little bit more with the numbers, too, which I think might help last quarter for perspective. 61% of our net new ARR was SaaS. This quarter, that's 70%. Again, when you're talking landing these customers at a 2 to 3x smaller ASP than software, that does have a significant impact on ARR.*

<Q: Jason Noah Ader> Got you. Okay. So the explanation, if I can summarize is just you're seeing a bigger shift to SaaS than maybe you expected at the beginning -- when you gave the guidance and that had an impact on the number.

[Emphasis added].

33.    The aforementioned press releases and statements made by the Individual Defendants or otherwise about the Company are in direct contrast to their public statements made during the Class Period. In those press releases and earnings calls, Defendants made representations to investors that Commvault's new ARR growth was steady and continued to increase guidance quarter after quarter.

34.    Analysts expressed surprise and concern at the Company's ARR growth miss. In particular, CFRA downgraded its recommendation on shares of Commvault to Hold from Buy and lowered its price target to $101 from $172.

15

35.    Similarly, Mizuho published a report lowering its price target to $140 from $180, stating in pertinent part:

CVLT reported an underwhelming F3Q, as total net new ARR of $39M fell short of mgmt's ~$40-45M range. Mgmt attributed the ARR shortfall primarily to a growing SaaS net new ARR mix shift (while a favorable dynamic for CVLT's business, these deals carry much lower ASPs), along with longer duration on new term-based deals. CVLT also slightly lowered its full-year ARR guide.

36.    Additionally, DA Davidson published a report lowering its price target to $135 from $185, stating in relevant part:

Reasons Given For ARR Miss Leave Many With Questions: Mgmt. attributed the ARR miss to two dynamics: 1) a higher mix of NNARR coming from SaaS & the fact that SaaS deals typically land smaller than Term-License deals, and 2) a higher mix of new logo Term-License deals than expected, which carry longer duration & come with some price concessions for that longer duration, which has a negative impact on ARR as it is calculated as TCV / duration. With respect to #1, last qtr., mgmt. said they expected SaaS to be ~60% of 2H NNARR. If the real range for FQ3 should have been $40-45M, the expectation for FQ3 SaaS NNARR was thus ~$25.5M. FQ3 SaaS NNARR was $27.1M, a bit ahead of that figure. For this ~$1.6M of SaaS NNARR upside to have resulted in an overall negative impact to total NNARR, one has to conclude that this SaaS NNARR upside came at the expense of an even larger pool of Term-License NNARR that could have been signed instead. The problem is there are very few, if any, deals in the pipeline where a customer is unsure if they want to purchase Term-License or SaaS, because customers predominantly purchase Term-Licenses to protect on-premise data & SaaS to protect cloud/SaaS data. So, for this explanation to hold water, one has to believe that this ~$1.6M SaaS NNARR upside in some way prohibited reps from closing Term-License deals with other customers in the quarter. Maybe, though CVLT has shown both SaaS & Term-License NNARR upside in the same quarter before, so maybe not. With respect to #2, new logo Term-License deals do carry longer duration than Term-License cross-sell deals (~3-4 years vs. ~1-2 years), and there are some price concessions

16

given on those deals. These price concessions are just ~2-5% per mgmt., so it's hard to see how that could lead to a NNARR shortfall that is anywhere close to what it was. These explanations do not seem to have been enough for investors, who by & large are still concluding there must have been some other deals that pushed or were otherwise lost.

37.    Investors and analysts reacted immediately to Commvault's revelation. The price of Commvault's common stock declined dramatically. From a closing market price of $129.36 per share on January 26, 2026, Commvault's stock price fell to $89.13 per share on January 27, 2026, a decline of over 31% in a single day.

### Additional Scienter Allegations

38.    During the Class Period, Defendants acted with scienter in that they knew or otherwise were deliberately reckless in not knowing that the public statements disseminated on behalf of Commvault were materially false and misleading at the time they were made. Defendants had actual knowledge of, or access to, non-public information concerning the fact that variation in sale types would lead to a different ARR growth rate, thus, that providing elevated guidance was not realistic.

39.    In fact, Defendants knew or deliberately disregarded that increased SaaS deals would be likely to impact new net ARR growth and, therefore, negatively impact the projected $40-45 million baseline ARR expectation provided during the second quarter 2026 earnings call. Defendants knew or deliberately disregarded this

17

variation when creating such projections and providing guidance. Despite such knowledge, Defendants repeatedly increased the projected outlook for ARR growth throughout fiscal year 2026.

*Loss Causation and Economic Loss*

40.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Commvault's common stock and operated as a fraud or deceit on Class Period purchasers of Commvault's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Commvault's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Commvault's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

41.    Commvault's stock price fell in response to the corrective event on January 27, 2026, as alleged *supra*. On January 27, 2026, Commvault disclosed that third quarter 2026 ARR growth failed to meet the guidance provided by the Company.

42.    In particular, on January 27, 2026, Commvault disclosed that its ARR growth missed the Company's expectations, coming in at $39 million, short of the

full year guidance range of $40-45 million provided by the Company during the fourth quarter and full year 2025 earnings call. Furthermore, during the second quarter 2026 earnings call, Commvault increased its guidance from $40 million to $45 million for third quarter 2026, making the miss more pronounced.

*Presumption of Reliance; Fraud-On-The-Market*

43.    At all relevant times, the market for Commvault's common stock was an efficient market for the following reasons, among others:

      a.    Commvault's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

      b.    Commvault communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

      c.    Commvault was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these

19

reports was publicly available and entered the public marketplace; and

d.      Unexpected material news about Commvault was reflected in and incorporated into the Company's stock price during the Class Period.

44.     As a result of the foregoing, the market for Commvault's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Commvault's stock price. Under these circumstances, all purchasers of Commvault's common stock during the Class Period suffered similar injury through their purchase of Commvault's common stock at artificially inflated prices, and a presumption of reliance applies.

45.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

*No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine*

46. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they led investors to believe that Commvault's ARR growth would be steady and much higher. In fact, Commvault knew or deliberately disregarded the proper calculations to account for variations in sale types when providing projections to investors.

47. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

48. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Commvault who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such

21

assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Commvault's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

50. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Commvault's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Commvault or its transfer agent and may be notified of

the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of October 27, 2025, there were approximately 44.1 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

51.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Commvault;

c.    whether the Individual Defendants caused Commvault to issue false and misleading financial statements during the Class Period;

d.    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.    whether the prices of Commvault's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

24

# COUNT I

## *Against All Defendants for Violations of*

## *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

55.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Commvault common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Commvault's securities

25

at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Commvault's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

59.    By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Commvault's internal affairs.

61.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individuals Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Commvault's businesses, operations, future financial condition, intellectual property, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Commvault's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Commvault's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, Commvault's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Commvault's common stock at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Commvault's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Commvault's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock

during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against the Individual Defendants*

### *for Violations of Section 20(a) of the Exchange Act*

65.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Commvault's misstatements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Commvault which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Commvault disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout

29

the Class Period, the Individual Defendants exercised their power and authority to cause Commvault to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Commvault's common stock.

69.　The Individual Defendants, therefore, acted as controlling persons of the Company. By reason of their senior management positions and/or being directors of the Company, the Individual Defendants had the power to direct the actions of, and exercised the same to cause Commvault to engage in the unlawful acts and conduct complained of herein. The Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.　By reason of the above conduct, the Individual Defendants and/or Commvault are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

*[Signature block on following page]*

31

Dated: May 18, 2026                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**


*/s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff*

32